IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VILMA FRANCO-MELGAR, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-26-4596 |
| MARKWAYNE MULLIN, et al., | * | |
| Respondents. | * | |
| | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Vilma Franco-Melgar's Motion for Temporary Restraining Order (ECF No. 2), relating to her pending Petition for Writ of Habeas Corpus (ECF No. 1). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion for Temporary Restraining Order.

## I. BACKGROUND

Petitioner Vilma Franco-Melgar is a citizen and native of Honduras. (Pet. Writ Habeas Corpus ["Pet."] ¶ 1, ECF No. 1). She last entered the United States on April 20, 2005, and was granted withholding of removal to Honduras under the Convention Against Torture ("CAT") by an Immigration Judge on November 14, 2019. (Id.). She has remained released under an Order of Supervision ("OSUP") since 2019, subject to regular Immigration and Customs Enforcement ("ICE") check-ins and other conditions, with which she has complied for the last seven years. (Id.).

This is not Franco-Melgar's first Petition before this Court. On May 26, 2026, she appeared for a regularly scheduled ICE check-in, during which ICE revoked her OSUP, arrested, and detained her. June 4, 2026 Order at 2–4, Franco-Melgar v. Mullin (Franco-Melgar I), No. GLR-26-2059 (D.Md. June 4, 2026) (ECF No. 13). On June 4, 2026, this Court granted her Motion for Temporary Restraining Order and concluded that she would likely succeed on the merits of her argument that her detention was improper. Id. at 3–4, 6. On June 22, 2026, the Court dismissed her pending Petition as moot and closed the case. Franco-Melgar v. Mullin (Franco-Melgar II), No. GLR-26-2059, 2026 WL 1784831, at *3 (D.Md. June 22, 2026).

On November 3, 2026, however, ICE again detained Franco-Melgar as she reported for her monthly ICE check-in. (Pet. ¶¶ 5–6). This time, ICE officials informed her that they intended to remove her to a third country that same day. (Id. ¶ 6). She remains in ICE custody at Central Virginia Regional Jail in Virginia. (Resp'ts' Status R. at 1, ECF No. 10).[1]

Franco-Melgar filed her second Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order while detained in Baltimore on November 3, 2026, (ECF Nos. 1–2),[2] alleging violations of the Due Process Clause of the Fifth Amendment and 8 C.F.R. § 241.4(l), (Pet. ¶¶ 33–56). She seeks immediate release and a declaration that her detention is unlawful. (Id. at 16). Respondents Markwayne Mullin, Todd Blanche, David

---

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[2] Franco-Melgar's Petition for Writ of Habeas Corpus is not yet fully briefed. (See generally Status R. Re Briefing Sched., ECF No. 8).

J. Venturella, and Robert Guadian (collectively, "Respondents" or "the Government") filed a Response to Franco-Melgar's Motion on November 10, 2026, (ECF No. 11), and Franco-Melgar filed a Reply on November 12, 2026, (ECF No. 12).

## II. DISCUSSION

### A. Standard of Review

To prevail in a motion seeking injunctive relief, the movant must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in her favor; and (4) that the relief requested is in the public's interest. Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008). When, as here, the Government opposes a motion for injunctive relief, the balance of equities and public interest factors merge. Miranda v. Garland, 34 F.4th 338, 365 (4th Cir. 2022) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)). The Court again finds that Franco-Melgar satisfies the four Winter factors, for the reasons stated below.

### B. Analysis

In her Petition and Motion, Franco-Melgar argues that her OSUP revocation, arrest, and detention violate her Fifth Amendment procedural due process rights and the regulations governing OSUP revocation at 8 C.F.R. § 241.4(l). (Pet. ¶ 34; Pet'r's Mot. TRO & Mem. Supp. ["Mot. TRO"] at 10–14, ECF No. 2). She seeks immediate release as relief. (Pet. at 16). The Government responds that Franco-Melgar is unlikely to succeed on the merits of her Petition, arguing that she was lawfully detained in accordance with the

procedures at 8 C.F.R. § 241.13(i). (Resp. Mot. TRO ["Resp."] at 9, ECF No. 11). The Court will address each Winter factor in turn.

### 1. Likelihood of Success on the Merits

Under the Accardi doctrine, "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" where a petitioner demonstrates "prejudice resulting from the violation." United States v. Morgan, 193 F.3d 252, 266–67 (4th Cir. 1999); see also United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). "Prejudice is 'presume[ed]' however, where 'an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency.'" Marroquin Escobar v. Noem, No. PX-26-590, 2026 WL 1109342, at *3 (D.Md. Apr. 24, 2026) (alteration in original) (quoting Delgado-Corea v. Immigr. & Naturalization Serv., 804 F.2d 261, 263 (4th Cir. 1986)).

#### a. Franco-Melgar's Release Was Revoked Under § 241.4(l)

As an initial matter, "[t]he Court must emphasize that the appropriate regulatory authority under which a noncitizen's release may be revoked is based on which regulatory authority provided for the noncitizen's release." Dominguez Lopez v. Mullin, No. MJM-26-918, 2026 WL 1993222, at *2 (D.Md. July 10, 2026) (first citing Santamaria Orellana v. Baker, No. TDC-25-1788, 2025 WL 2444087, at *5–6 (D.Md. Aug. 25, 2025); and then citing Nawabi v. Trump, No. TDC-25-3831, 2026 WL 1584489, at *3 (D.Md. June 3, 2026)). Indeed, the United States Court of Appeals for the Tenth Circuit recently reaffirmed this very principle in Abedi v. Carter, No. 25-3179, 2026 WL 3149141 (10th Cir. Oct. 21,

2026), where the court explained that "[w]hen a noncitizen is released pursuant to" § 241.4(l), those "provisions govern the revocation of that release . . . . But when a noncitizen is released from detention following a determination that the noncitizen is not significantly likely to be removed within the reasonably foreseeable future, the provisions of § 241.13(i) apply instead." Id. at *15.[3]

As this Court previously found, Franco-Melgar was released on an OSUP under 8 C.F.R. § 241.4(l). June 4, 2026 Order at 3, Franco-Melgar I, GLR-26-2059 (ECF No. 13). She was released, and her OSUP was reinstated, in accordance with that general provision. (Pet. ¶ 41). Yet the Government inexplicably now cites the procedures at 8 C.F.R. § 241.13 to justify the propriety of the revocation. (See Notice Revocation Release ["NRR"] at 1, ECF No. 11-4; Resp. at 9). For the Government's benefit, the Court will repeat: the special procedures at § 241.13 do not apply to individuals released under § 241.4. See Abedi, 2026 WL 3149141, at *14–16. Because Franco-Melgar was originally released under § 241.4(l), the procedures in that section apply here, not the procedures outlined in § 241.13(i).

**b. Respondents Failed to Comply with § 241.4(l)'s Revocation Procedures**

Respondents alternatively argue that the revocation of Franco-Melgar's OSUP and her subsequent detention comply with the requirements found at 8 C.F.R. § 241.4(l). (Resp.

[3] Although Abedi v. Carter, No. 25-3179, 2026 WL 3149141 (10th Cir. Oct. 21, 2026), is an out-of-circuit decision, and as such, does not bind this Court, in the absence of decisions from the United States Court of Appeals for the Fourth Circuit on the issue, "we may look to a consensus of cases of persuasive authority from other jurisdictions, if such exists." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538–39 (4th Cir. 2017) (citation modified).

at 10). In response, Franco-Melgar asserts that Respondents "have not demonstrated that the revocation decision was actually made under that provision or that Petitioner received meaningful notice of that ground for revocation." (Pet'r's Reply Mem. L. Supp. Mot. TRO ["Reply"] at 5, ECF No. 12).

Section 241.4(l) requires that when a noncitizen is re-detained—as Franco-Melgar was—ICE must (1) notify the noncitizen of the reason that release is being revoked; and (2) provide the noncitizen with an opportunity to respond to those reasons through an informal interview. 8 C.F.R. § 241.4(l)(1). These are not ornamental procedures intended to summarily rubber stamp every detention; instead, the regulations "require, at minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." Vo v. Lyons, No. 25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026) (emphasis added) (citing 8 C.F.R. §§ 241.4(l)(2)–(3), 241.13(i)). This "notice 'must provide real, specific, concrete information that a noncitizen could actually respond to,'" rather than simply "checked boxes" and "vague statements [that do] not include any facts providing any reason" justifying re-detention. Omorodion v. Guadian, No. TDC-26-3265, 2026 WL 2923746, at *7 (D.Md. Sep. 29, 2026) (quoting Hashemi v. Noem, 809 F.Supp.3d 1027, 1035 (C.D.Cal. 2025)).

"Numerous federal courts have found that such generic statements lacking any facts that reveal a specific reason for the revocation are insufficient to meet the requirement of notice of the reasons for revocation under either 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13(i)." Id. (first citing Sokpa-Anku v. Mullin, No. 26-CV-01504 (AJT/LRV), 2026

WL 1878709, at *4 (E.D.Va. June 29, 2026) (finding that a Notice of Revocation stating that there were "changed circumstances" such that "the Petitioner 'can be expeditiously removed" did not amount to valid notice as it "simply recite[d] the language of the regulation" (quoting Aguilar v. Mullin, No. 1:26CV00588 (AJT/WBP), 2026 WL 1256825, at *4 (E.D.Va. Apr. 29, 2026)); then citing Vo, 2026 WL 323133, at *5 (finding that a Notice of Revocation that merely "quote[d] language from two different regulations in a manner that offer[ed] no meaningful explanation as to the basis for [the] revocation" was invalid under both 8 C.F.R. §§ 241.4(l) and 241.13.(i)); and then citing Mejia v. U.S. Immigr. & Customs Enf't & Removal Operations, 828 F.Supp.3d 273, 280 (D.N.H. 2026) (stating that "'[g]eneric and conclusory statements' offered in a Notice of Revocation 'are insufficient bases for revoking . . . supervised release' under either regulation" (quoting Hall v. Nessinger, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026))).

Here, it is evident from the face of the Notice of Revocation of Release that Franco-Melgar did not receive any individualized or meaningful review of her OSUP revocation under § 241.4(l), as Respondents failed to identify the correct provision or give any rationale other than checking boxes reciting the incorrect regulation. (See generally NRR). Although Respondents attempt to offer post hoc justifications for why these actions purportedly also fulfill the requirements under the correct regulation, (Resp. at 9–12), it is unequivocally not the responsibility of an Assistant U.S. Attorney to provide the proper justification—the regulations require that this information be provided at the time of

revocation, by an authorized official.[4] A post hoc rationalization "cannot serve as a sufficient predicate for agency action." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 539 (1981); see also Ambrocio Lopez v. Mullin, No. 1:26-CV-2104 (LMB/IDD), 2026 WL 2532313, at *4 (E.D.Va. Aug. 25, 2026) ("[A]ny post-hoc rationalization ICE may provide to correct the unlawful agency action would be ineffective because a post-hoc rationalization "cannot serve as a sufficient predicate for agency action." (quoting Donovan, 452 U.S. at 539)).

[4] Though the Court does not need to decide this question here, other courts have doubted the legitimacy and authority of the internal Enforcement and Removal Operations ("ERO") Delegation Order on which Respondents rely to justify the delegation of authority to an Assistant Field Office Director. (See Resp. Mot. TRO at 9, ECF No. 11; ERO Delegation Order, ECF No. 11-5); see e.g., Henriquez v. Mullin, No. 1:26-CV-2159 (AJT-WEF), 2026 WL 2455272, at *3 n.3 (E.D.Va. Aug. 20, 2026) ("The Court need not address the substantial issues concerning the propriety of the purported delegation since Respondents" failed to satisfy the other requirements of 8 C.F.R. § 241.4(l), "independent of whether the appropriate official issued the revocation notice."); Prasomsy v. Albarran, No. 3:26-CV-09534-JSC, 2026 WL 2807096, at *4 (N.D.Cal. Sep. 18, 2026) ("The Court finds the reasoning of these cases persuasive and concludes Petitioner has raised a serious legal issue regarding whether AFOD Bolanos had authority to revoke his release."); Espinosa v. Blanche, No. 26 CIV. 5802 (AT), 2026 WL 3082944, at *2 n.3 (S.D.N.Y. Oct. 14, 2026) ("Because the Court decides the petition on another ground, the Court need not decide whether the delegation order is valid.").

As Judge Chuang of this Court has previously determined:

> the requirement that an Executive Associate Director make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement. A statutory or regulatory provision requiring that a decision affecting personal rights be made only by a designated senior official is fairly deemed to be an important procedural safeguard.

Santamaria Orellana v. Baker, No. TDC-25-1788, 2025 WL 2841886, at *5 (D.Md. Oct. 7, 2025).

Furthermore, Respondents seem to argue that asking to have an attorney present at an informal interview constitutes "refus[al] to participate" and an effective waiver of that procedure. (Resp. at 12). The Court finds this to be an indefensible position. There is no moral or legal basis that justifies this argument, and it would be advantageous for Respondents to remember that noncitizens' right of access to their counsel is codified in the Code of Federal Regulations. See 8 C.F.R. § 292.5(b) ("Whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative . . . ."). Where Franco-Melgar had "the right to be represented by an attorney," she unequivocally had the right to request that her retained counsel be present. Id. The Court therefore finds that she did not receive an informal interview as required by § 241.4(l)(1).

Having found that Franco-Melgar has shown a high likelihood of success on the merits of her claims, the Court will move on to the remaining elements of the Winters analysis.

**2. Likelihood of Irreparable Harm**

The Court previously found that Franco-Melgar demonstrated a likelihood of irreparable harm in the absence of injunctive relief and incorporates the rationale in the Court's prior decision to reach the same conclusion here:

> Specifically, Franco-Melgar alleges that she helps support her children and grandchild who live with her and that separation from her family and local community and counsel is precisely the type of irreparable harm that warrants immediate judicial intervention. Indeed, economic hardship and separation from one's family can constitute irreparable harms in this context. The Court also finds that Franco-Melgar has demonstrated a likelihood of irreparable harm in the absence of injunctive relief by virtue of her

> meritorious Fifth Amendment claim, as a deprivation of a constitutional right, for even minimal periods of time, unquestionably constitutes irreparable injury.

June 4, 2026 Order at 5, Franco-Melgar I, No. GLR-26-2059 (ECF No. 13) (citation modified).

**3. Balance of Equities and Public Interest**

As in Franco-Melgar I, here too, the Court finds, once again, "that the balance of equities tip in Franco-Melgar's favor and that the requested relief is in the public's interest." Id. at 6. Franco-Melgar has no criminal record and works as a certified nursing assistant for a home care agency providing daily well-being, emotional support, and medical assistance to elderly residents. Id. She lives with her husband, her four children—two of whom are lawful permanent residents, and two of whom are U.S. citizens—and her grandchild in Germantown, Maryland, where her local community and counsel are located. Id.; (see also Mot. TRO at 16 (stating that Franco-Melgar's circumstances regarding her criminal history, employment and family ties have not materially changed since the Court's June 4, 2026 Order)). Since the Court ordered her release earlier this year, she has continued to comply with ICE monthly reporting requirements and the conditions of her release. (Mot. TRO at 16).

While the Court acknowledges that, generally, the Government has an interest in enforcing immigration laws, the Government must also abide by the laws and regulations protecting the constitutional rights of individuals. See Leaders of a Beautiful Struggle v. Balt. Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021) ("[I]t is well-established that the public

interest favors protecting constitutional rights.”). The Court therefore finds that the final two factors weigh in favor of granting the requested relief.

## III. CONCLUSION

The Court finds that Franco-Melgar has sufficiently demonstrated that Respondents failed to comply with 8 C.F.R. § 241.4(l) when revoking her Order of Supervision, constituting a violation of the Accardi doctrine, and that the Winters factors weigh in favor of granting preliminary relief. For the foregoing reasons, the Court GRANTS Franco-Melgar’s Motion for a Temporary Restraining Order (ECF No. 2) and will order her immediate release. A separate Order follows.

Entered this 19th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge